In re NORMAN et al.

No. 6854.

District Court, W. D. Louisiana, Monroe Division.

Feb. 10, 1940.

E. P. Norman, of Rayville, La., for debtors.

Warren Hunt, of Rayville, La., for debtors.

W. D. Cotton, of Rayville, La., for Federal Land Bank.

Theodore Graupner, of St. Louis, Mo., for St. Louis Joint Stock Land Bank.

R. V. Reeves, of Oak Grove, La., for Bradford Nat. Bank of Greenville, Ill.

DAWKINS, District Judge.

The Supervising Conciliation Commissioner has, after hearing the parties, made the following report and recommendations with respect to the application of creditors to dismiss this proceeding (the report of the Supervising Conciliation Commissioner is quoted in full on the following pages) :

"Report and Recommendations of C. T. Munholland, Supervising Conciliation Commissioner, in Connection With Application of Federal Land Bank Filed May 3, 1939, to Dismiss This Procedure.

"This proceeding was allowed filed under Section 75 of the Bankruptcy Act, 11 U.S. C.A. § 203, on July 13th, 1937. Three of the petitioning debtors, E. P. Norman, Ralph W. Norman, and Mrs. Fannie Norman Carter, are heirs of Charles Columbus Norman, deceased, and the other petitioners, Mrs. Charles Columbus Norman, is widow in community of decedent.

"Farm property owned by petitioners consists of agricultural property situated in the Parish of Reichland, Louisiana, and in the county of Clinton, Illinois. However, petitioner E. P. Norman owns a tract of land which is not cultivated and which is situated in the Parish of West Carroll, Louisiana. In addition to this property, the heirs and widow own town lots located in the Town of Rayville, Louisiana.

"The debtors failed to obtain the consent in writing of a majority in number and amount of creditors whose claims are affected and to the contrary, creditors were opposed to their proposal and not a single creditor accepted the proposal. However, the court permitted the debtors to amend their original petitions and allowed them to be adjudged bankrupt under subsection (s) of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s, on October 16, 1937. Immediately, after the adjudication a meeting was called for the purpose of appraising the properties owned by the debtors and for the fixing of reasonable annual rental values.

"The Richland Parish farm property consists of 252.44 acres upon which, at the time of the filing of the proof of claim in 1937, the indebtedness due Federal Land

Bank amounted to $4997.50. Richland State Bank holds a second mortgage secured by two notes, one for $965.46 with eight per centum interest from July 1st 1934, and the other for $4160.00 with eight per centum interest from January 1st, 1935 together with ten per centum attorney's fees on each of the claims. The claim of Richland State Bank is further secured by mortgage on the town lots.

"At the meeting held for the purpose of appraising property and fixing annual rental the debtors were represented by Mr. E. P. Norman, one of the petitioning debtors who is an attorney, and by Mr. Warren Hunt. Federal Land Bank was represented by Mr. W. D. Cotton, Attorney, Rayville, Louisiana.

"All parties present agreed to the appraisal of the property fixed by the appraisers named, as follows:

(1) 252.44 acres of farm land... $6,000.00
(2) Four of the town lots, situated in Rayville, Louisiana... 2,500.00
(3) One town lot with improvements, situated in Rayville, Louisiana ................ 4,000.00

"After hearing all parties, it was by me concluded that an annual rental value of the property would be as follows:

(1) For farm property the rental for the year 1937 was fixed at $450.00 and for the following years during pendency of the proceeding $750.00
(2) As to the town property the rental value was fixed at $25.00 per month

"At the time of the filing of this application on May 3rd, 1939, a total of $675.00 had been paid on the rental. Federal Land Bank of New Orleans for several years has had to pay taxes on the farm property and Richland State Bank has had to pay taxes on the town property.

"Shortly after the application to dismiss the proceeding was filed, the debtor deposited an additional $175.00, making a total of $850.00 which was tendered as rental on the farm property. So far as the record reflects, nothing has been paid as rental on the town property.

"None of the debtors other than E. P. Norman are actually engaged in farming the properties either in Louisiana or in Illinois. At this point it may be stated that nothing whatever has been paid into the registry of the Court as rental or otherwise in way of revenue from the property situated in Clinton County, Illinois. The rental payments are due on November 1st and May 1st, but so far the debtors have failed to make accounting for the crops raised on property for the crop year 1939.

"From the foregoing, it will be noted that accrued rental on the Louisiana properties are as follows:

(1) Farm Property:
Year 1937 ................ $ 450.00
Year 1938 ................ 750.00
Year 1939 ................ 750.00

Total .................... $1950.00
Total amount Paid on rental..... $ 850.00
Delinquency on Rental.......... $1100.00

(2) Town Property:
As stated nothing has been paid on town property, although there has accrued a total rental of............. $ 325.00

"It is clearly reflected from the foregoing figures that the debtors have failed to pay the annual rental fixed. In this connection I point out to the Court that at the time the rental was fixed, there was no objection on part of the debtors to the amount fixed but to the contrary they agreed to the fairness thereof. No complaint by pleading or otherwise has been made by the debtors as to the amount of rental.

"In addition to the fact that the debtors have failed to pay the reasonable annual rental, I further report that during the pendency of this proceeding I am convinced that the debtors have no hope for rehabilitation. As stated, the only one who is carrying on the farming operations is E. P. Norman, who has clearly failed in the efforts made by him to make any substantial progress to the end of rehabilitation.

"In view of the foregoing and in accordance with the provisions of subsection (s) of Section 75, it is my opinion that a Trustee should be appointed and the proceeding wound up in accordance with the provisions of subsection (s) of Section 75.

"St. Louis Joint Stock Land Bank, which holds a first mortgage on property owned by the debtors in Clinton County, Illinois has filed an application to dismiss the proceedings so far as it permits them to proceed with their foreclosure which has here-

tofore been instituted. The application of the St. Louis Joint Stock Land Bank is covered in a separate report wherein I am recommending that this creditor be permitted to foreclose its deed of trust and that said property not be handled by the Trustee to be appointed in this proceeding.

"Parties with an interest are notified that this report will be submitted to the Court with appropriate decree at the expiration of ten days from this date unless lawful opposition is made."

On November 16, 1939, the debtors again filed with the Court what they term their "answer" to the motions to dismiss and the report of the Commissioner. The original motions to dismiss, filed April, 1939, were referred to the Supervising Conciliation Commissioner for hearing. The debtors then, on the 29th of that month, filed an answer embracing most of the matters that are now reasserted in the pleading filed before the Court.

The "answer" filed with the Court, as stated, involves most of the matters referred to the Commissioner, with the exception that the debtors now claim to have a proposal from the Bradford National Bank of Greenville, Illinois, to advance some $16,505.12 upon lands in West Carroll Parish, Louisiana, "if E. Powell Norman will sell, transfer and deliver by deed, all of the lands covered by the above mortgages, in West Carroll Parish * * * free of all encumbrances and liens for the cash consideration of $16,505.12" and that the said Bank "has agreed to accept the lands * * * and then after the debt is paid * * * to give to E. Powell Norman opportunity to buy in the above lands for the same consideration for which he sold them * * * plus all interest, charges, costs, and taxes, to date, he, E. Powell Norman, purchased the lands."

The same "answer" also recites arrangements, which it is claimed exist with the St. Louis Joint Stock Land Bank with respect to lands in Clinton County, Illinois, by which the rents, and revenues collected by the representative of the Bank since 1934 on 180 acres of land, together with farm benefits under the Agriculture Adjustment Act, 7 U.S.C.A. § 601 et seq., "about equal the interest payments and principal payments on the above loan." It is asked that a hearing be held and rental fixed for the 180 acres of land in Illinois.

This answer is signed by E. Powell Norman for all of the debtors and is verified by him alone "according to his information and belief."

■ All of these matters should have been urged and considered at the hearing before the Supervising Conciliation Commissioner, but apparently no effort was made to present anything substantial or tangible to that end. The rentals fixed on the Louisiana property have not been paid as shown by the Commissioner's report and there appears to be no reasonable prospect that they ever will be. The duty was upon the debtors to bring to the attention of the Commissioner any such proposals and to offer reasonable evidence of the possible accomplishment of these things which they now claim can be done. They could not sit down and wait until the Commissioner had recommended the appointment of a trustee and the winding up of this estate. If such a possibility exists, then it should have been supported by something more tangible in the way of communication or proposal in writing from the Bradford Bank. I do not believe the Court is justified in reopening this matter on the showing made. In fact, the attorney who represented these debtors in addition to the said E. Powell Norman, who is also an attorney, has made no appearance with respect to the report of the Commissioner, no doubt for the reason he considers the situation hopeless. Charles Columbus Norman, for whose estate the present appears, invoked the provisions of Section 75 of the Bankruptcy law, as his personal representatives died in 1930, and this proceeding was filed on January 19, 1937, about seven years later, and as disclosed by the Commissioner's report, there has been little effort made and apparently no chance of working out its affairs at any time.

■ All of these circumstances considered, I think the report of the Supervising Conciliation Commissioner should be approved and that a Trustee should be appointed to wind up this estate.

Proper decree should be presented.